IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:11-cv-40

| | |
|---|---|
| ROBIN A. MATO, CHERIE B. MATO and MERC INVESTMENT CORP. d/b/a WINDOW WORLD OF PHILADELPHIA | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| WINDOW WORLD, INC., | )<br>) |
| Defendant. | )<br>)<br>) |

**ORDER**

**THIS MATTER** is before the Court on Defendant Window World, Inc.'s Motion to Dismiss (Doc. 7), filed January 28, 2011.

**I. INTRODUCTION**

Defendant Window World, Inc. ("Window World") is a North Carolina corporation which is engaged in the business of designing, marketing and selling custom-made windows and doors and vinyl siding for residential and commercial use. Window World licenses the use of the "Window World" trademark to individuals and entities that desire to operate a "Window World" business. Each Window World business sells and installs Window World's products pursuant to a licensing agreement entered into between Window World and each of its licensees. Plaintiffs, who are Pennsylvania residents and a Pennsylvania corporation, entered into a Licensing Agreement with Window World pursuant to which Plaintiffs were granted the right and undertook the obligation to operate a business selling and installing Window World products in

1

the territory defined in the Licensing Agreement.

The Licencing Agreement that allowed Plaintiffs to operate as a Window World licenesee was entered into on November 16, 2005. Section 2(c) of the Licensing Agreement deals with renewal:

> If [Plaintiffs are] not in any manner in default hereunder, under the conditions set forth herein and with the written consent of [Window World], [Plaintiffs] may renew this Licensing Agreement for successive renewal terms of five (5) years each. [Plaintiffs] must provide [Window World] with written notice of [Plaintiffs'] intention to renew not less than six (6) months nor more than twelve (12) months prior to the expiration of the initial term . . . .

This provision, therefore, set forth two requirements for the Licensing Agreement to be renewed: (1) Plaintiffs must notify Window World of their intent to renew sometime between November 16, 2009 and May 16, 2010, and (2) Window World must consent in writing to the renewal. In the event these conditions were not met, the Licensing Agreement would expire on November 16, 2010. Plaintiffs did not provide written notice to Window World of their intention to renew within the specified time period. Therefore, on November 16, 2010, the Licensing Agreement, by its terms, expired.

The next day Window World's president, Blair Ingle ("Ingle"), contacted Plaintiffs by telephone to determine whether Plaintiffs desired to renew the Licensing Agreement. Plaintiffs informed Ingle that Plaintiffs did desire to renew it.  Two days later, on November 19, 2010, Ingle sent Plaintiffs a "Request to Renew License" form. On November 22, 2010, Plaintiffs returned the completed form to Window World. On November 28, 2010, Plaintiffs complied with Window World's request for financial information reflecting Plaintiffs' revenues, expenses and advertising information. On December 5, 2010, and again on December 7, 2010, Window World requested additional financial and marketing data from Plaintiffs, and Plaintiffs provided

Window World with the requested data. During this time, the parties continued operating pursuant to the terms of the Licensing Agreement.

On December 23, 2010, Window World sent Plaintiffs a written notice (the "Termination Notice") notifying Plaintiffs that Plaintiff must cease selling Window World products and advertising as Window World of Philadelphia by January 1, 2011. The stated reasons for termination of the Licensing Agreement was Plaintiffs' failure to notify Window World of Plaintiffs' intent to renew during the time period set forth in the Licensing Agreement and Window World's desire not to renew the Licensing Agreement.

Plaintiffs argue that such termination was wrongful because: (1) Window World gave them the opportunity to submit written notice of their intent to renew the Licensing Agreement after the renewal period expired, (2) for over a month the parties operated as if the Licensing Agreement was still in effect, and (3) Window World continued to accept payments from Plaintiffs after the Licensing Agreement expired.

Plaintiffs commenced this diversity action on December 30, 2010, and filed a motion for preliminary injunction on January 4, 2011, in the Eastern District of Pennsylvania. Window World filed its motion to dismiss, or in the alternative, to transfer this matter to the Western District of North Carolina on January 28, 2011. On February 28, 2011, Judge Stengel entered a Memorandum and Order (Doc. 10), wherein he granted Defendant's Motion to Transfer the matter to this Court but specifically declined to rule on Defendant's Motion to Dismiss. Subject matter jurisdiction in this action is proper pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

The central issue for resolving a Rule 12(b)(6) motion is whether the complaint states a plausible claim for relief. *See Francis v. Giacomelli*, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Giacomelli*, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Consumeraffairs.com*, 591 F.3d at 255; *see also Giacomelli*, 588 F.3d at 189.

The complaint need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); *see also Consumeraffairs.com*, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974; *see also Consumeraffairs.com*, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. ___, 129 S. Ct. at 1949; *see also*

*Consumeraffairs.com*, 591 F.3d at 255. The mere possibility that the defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. *Consumeraffairs.com*, 591 F.3d at 256; *Giacomelli*, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claims from possible to plausible. *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974; *Consumeraffairs.com*, 591 F.3d at 256.

### III. DISCUSSION

**A. Plaintiffs and Window World did not impliedly agree to a new five-year contract**

Window World argues that Plaintiffs Complaint fails to state a claim for breach of contract because the allegations of implied renewal, even when viewed in the light most favorable to Plaintiffs, are insufficient to establish the renewal of the Licensing Agreement. Plaintiffs disagree and contend that their Complaint states a claim for breach of contract. More specifically, Plaintiffs argue that by continuing to perform under the terms of the Licensing Agreement from November 17, 2010 until December 23, 2010, while Plaintiffs' "Request to Renew License Form" was under review, Window World and Plaintiffs impliedly agreed to perform for an additional five-year period under the terms of the initial Licensing Agreement. This Court does not agree.

In order to succeed in a breach of contract action under North Carolina law the plaintiff must establish: (1) the existence of a valid contract; and (2) breach of the terms of that contract. Poor v. Hill, 530 S.E.2d 838, 843 (N.C. App. 2000). North Carolina courts have recognized the implied renewal of contracts by the continued performance of the parties. *See Smith v. Central Soya of Athens, Inc.*, 604 F. Supp. 518, 528 (E.D.N.C. 1985) (citing *Keraney v. Hare*, 144 S.E.2d 636, 638 (N.C. 1965)); *Vernon v. Kennedy*, 50 S.E.2d 31, 32 (N.C. App. 1981).

In support of their theory of implied renewal, Plaintiffs rely primarily on *Smith v. Central Soya of Athens, Inc.*, 604 F. Supp. 518 (E.D.N.C. 1985). In *Central Soya*, the parties entered into written contracts in 1971 for one-year terms pursuant to which the defendant would supply the plaintiff with flocks of chickens for the yearly egg laying cycles. 604 F. Supp. at 521. Again, in 1973, 1976, and 1977, the parties entered into new written contracts. *Id.* Though no written contracts were entered into for the years 1978, 1979, 1980, and 1981, the parties continued to perform under the terms of the written agreements. *Id.* In December, 1981, however, after supplying chickens to plaintiffs for ten years, Defendant sold its business and all its interests and rights in the egg production contracts with the plaintiffs. *Id.* When negotiations between the plaintiffs and defendant's successor did not produce an agreement, defendant's successor removed all chickens in plaintiffs' houses at the end of the laying cycle and supplied no additional replacement chickens. *Id.* at 522. To determine the relationship between the parties in the years where the parties performed but not under written contracts, the *Central Soya* court analogized from the leasehold context and held that,

> "[T]he parties by their conduct 'held over' or impliedly renewed the contracts beyond their original terms. However, the same terms governed their relationship and the parties clearly continued to operate on a year-to-year (or flock-to-flock) basis, subject always to expiration of the contracts at the end of any year and the right of the defendants to sell or dispose of the chickens at any time for any reason."

*Id.* at 528. While the *Central Soya* court held that implied contracts were created when the parties *clearly* continued to operate on a year-to-year basis by delivering the flocks, the *Central Soya* court declined to find the existence of an implied contract when the defendant stopped delivering the chickens. *Id.* By not delivering the chickens at the end of an implied contract term, the defendant "did nothing more than decline to renew the contracts by ceasing performance at the end of the contract period." *Id.*

6

Plaintiffs argue that *Central Soya* controls this case and supports Plaintiffs' contention that Plaintiffs' Complaint states a claim for breach of contract because: (1) the parties continued performance impliedly renewed the Licensing Agreement; (2) the impliedly renewed Licensing Agreement was for an additional five-year term; and (3) Window World's attempt to cancel the Licensing Agreement constituted breach.

Plaintiffs' attempts to analogize this case to *Central Soya* fail as several key facts make *Central Soya* inapposite. Unlike *Central Soya*, the continued performance of the parties occurred in the context of (1) Window World informing Plaintiffs that the Licensing Agreement had expired, (2) Plaintiffs completing a "Request for Renewal Form," and (3) Plaintiffs providing Window World with updated financial information. Such context alone should notify Plaintiffs that the Licensing Agreement had not been impliedly renewed. *See e.g., Elizabeth City Water & Power Co. v. Elizabeth City*, 123 S.E. 611 (N.C. 1924) (continued performance after expiration of ten year contract between Elizabeth City and water company did not impliedly renew contract for another ten-year term but merely continued as a contract at will). Continued performance, under circumstances indicating a temporary posture, while an application for renewal is pending does not create an implied contract under the terms of the previous written contract. At most, the parties had an at will contract during this temporary period. Indeed, if the contract was impliedly renewed by the parties conduct, Plaintiffs would not need to fill out the "Request for Renewal Form" or provide Window World with updated financial information.

As stated above, while implied contracts were found when continued performance lasted for the entire term of the original contract in *Central Soya*, no implied contract was found when the defendant in *Central Soya* stopped performance. This case, even when the facts are viewed in the light most favorable to Plaintiffs, is more akin to the latter as "[the defendant] did nothing

7

more than decline to renew the contracts by ceasing performance after the end of the contract period. This conduct fails to constitute a breach of any of the written or implied contracts between the parties." *Id.*

**B. Window World did not waive its right to written consent before renewing the Licensing Agreement**

Moreover, in order for Plaintiffs to sufficiently plead the existence and breach of an implied contract, Plaintiffs must plead sufficient factual allegations making it plausible that Window World waived its contractual right to require its written consent to any renewal of the Licensing Agreement. Window World argues that Plaintiffs have not sufficiently pled that Window World waived its right to refuse written consent to any renewal of the Licensing Agreement. This Court agrees.

Under North Carolina law, the elements of a waiver are: (1) the existence, at the time of the alleged waiver, of a right, advantage or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage or benefit. *Demeritt v. Springsteed*, 693 S.E.2d 719, 721 (N.C. App. 2010). North Carolina courts look to whether a party's "actions and intentions . . . contradict the written agreement" in determining waiver of a contract right. *Id.* at 722.

Plaintiffs argue that they sufficiently allege facts showing that Window World waived its right to require Plaintiffs to submit written notice within the time period specified by the Licensing Agreement. Plaintiffs allege that: (1) Window World had a right to demand Plaintiffs submit written notice of their intent to renew; (2) Window World was aware of that right as set forth in the Licensing Agreement; and (3) Window World expressed its intention to relinquish that right when Window World contacted Plaintiffs, reminded Plaintiffs of their right to renew

8

and asked the Plaintiffs whether they wanted to renew the Licensing Agreement after the notice period expired and after the Licensing Agreement expired. Plaintiffs argue that they have sufficiently pled that Window World waived its right to insist Plaintiffs provide at least six months notice of their intent to renew the Licensing Agreement by continuing to operate pursuant to the terms of the Licensing Agreement after it expired.

Similarly, Plaintiffs argue, they have properly pled that Window World waived its right to insist on its written consent before renewal became effective. The Licensing Agreement attached to the complaint shows that: (a) Window World had the right to provide written consent before the renewal became effective; and (b) Window World was aware of that right. Furthermore, Plaintiffs allege that Window World expressed its intention to waive the written consent provision by continuing to do business with Plaintiffs pursuant to the terms of the Licensing Agreement after it expired.

Plaintiffs seem to readily conflate (1) allegations that Window World waived its right to six months notice of Plaintiffs' request to renew with (2) the conclusion that Window World therefore waived its right to review and give its "written consent" to any such request. The facts, when viewed most favorably to Plaintiffs, suggest that Window World waived its right to require Plaintiffs to submit their intent to renew within the time period stated in the Licensing Agreement. Even if Window World waived the time period requirement in the Licensing Agreement, the most favorable reading of the facts does not suggest that Window World waived its substantive rights to review and ultimately approve or reject that request for any reason whatsoever.

Plaintiffs' essentially claim that a waiver of the written consent provision occurred when the parties operated without an express contract for a month while Plaintiffs submitted and

9

Window World reviewed Plaintiffs' "Request for Renewal Form." Even when viewed in the light most favorable to plaintiff, such facts do not suggest a waiver. There is nothing inconsistent in Window World providing Plaintiffs a "Request to Renew License form," while still maintaining its contractual rights to provide or withhold its written consent to that request. Indeed, the form would have merely been a "License Renewal form," rather than a "Request to Renew License form" if the request was not subject to Window World's approval. Similarly, Window World's requests for financial information were part of its due diligence in promptly determining how to react to Plaintiffs' request to renew.

### C. The Complaint does not state a claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs contend that the Complaint pleads facts sufficient to state a plausible claim for breach of the implied covenant of good faith and fair dealing. Plaintiffs claim that Window World breached the implied covenant of good faith and fair dealing when Window World advised Plaintiffs that the Licensing Agreement would terminate on January 1, 2011.

In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Authority v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985). "[A] claim for breach of the covenant of good faith and fair dealing suggests a party did not act upon the principles of good faith or fair dealing to accomplish the purpose of an agreement." *Maglione v. Aegis Family Health Centers*, 161 N.C. App. 49, 56 (2005). "It requires the wrongful intent of a party to deprive another party of its contractual rights." *Hamm v. Blue Cross & Blue Shield*, No. 05-cv-5606, 2010 WL 5557501, at *10 (N.C. Super. Ct. Aug. 27, 2010).

Window World, meanwhile, argues that Plaintiffs claim for breach of the implied

10

covenant of good faith and fair dealing fails for reasons similar to those undermining its breach of contract claim. This Court agrees. Here, there is no dispute the Licensing Agreement expired on November 16, 2010, and the totality of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is based on conduct alleged to have occurred after the date. Window World could not have violated any implied covenants through its post-expiration conduct, and Plaintiffs have failed to identify any conduct which deprived them of a contractual right.

Plaintiffs' conduct, even liberally construed, establishes merely that the Licensing Agreement between the parties expired and that Window World exercised its contractual right to decline Plaintiffs' request to renew it. These allegations fail to support any inference of a valid contract beyond November 16, 2010, and Plaintiffs' allegations of a subsequent breach in December 2010 therefore fail as a matter of law.

## IV. CONCLUSION

In sum, Plaintiffs' Complaint fails to state claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs' Complaint fails to make out a plausible claim for breach of contract because Plaintiffs do not allege facts sufficient to show, even when viewed in the light most favorable to Plaintiffs, that Defendant waived its contractual rights or impliedly agreed to a new License Agreement for a five-year term. Similarly, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because Plaintiffs' Complaint does not contain factual allegations that plausibly suggest that Defendant did anything to prevent Plaintiffs from receiving benefits under the Licensing Agreement.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion to Dismiss (Doc. 7) is **GRANTED**. All other pending motions are **DENIED** as moot.

Signed: April 19, 2011

Richard L. Voorhees
United States District Judge